**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

ROLAND OVINGTON,

        Plaintiff,

v.                                             Case No: 6:11-cv-1319-Orl-31GJK

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

     Roland Ovington (the "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for benefits. Doc. No. 1. Claimant argues that the final decision should be reversed and remanded for an award of benefits or, alternatively, remanded for further proceedings because the Administrative Law Judge (the "ALJ") erred by: 1) failing to state with particularity the weight given and the reasons therefor to the opinion of Dr. Darwin Caraballo, M.D.; 2) failing to consider third-party statements made on Claimant's behalf; and 3) failing to state with particularity the reasons for giving some weight to the opinion of a non-examining psychologist, Dr. Gary Buffone. Doc. No. 15. For the reasons set forth below, it is **RECOMMENDED** that the Court **AFFIRM** the final decision of the Commissioner.

I.  **BACKGROUND.**

Claimant was born on September 28, 1964, and has an eighth grade education. R. 26, 115. When he was a child, Claimant underwent surgery to remove a tumor in his right ear. R. 339. Claimant has unsuccessfully sought disability benefits in the past and, on May 11, 2009, Claimant filed a new application for benefits alleging an onset of disability since September 30, 2006. R. 29, 115. Claimant alleges disability as a result of the tumor and subsequent mastoid cavity infections in the right ear, which he states cause dizziness, syncope, constant pain, headaches, anxiety, irritability, and vertigo. R. 151, 160. Claimant also states that he has a hernia which causes pain and limits his ability to sit, stand, walk, and lift. R. 165. Claimant is homeless and has been living in a van for approximately eleven years. R. 26-27. Claimant's past relevant work experience includes working as a dishwasher, security guard, parking lot attendant, and prep cook. R. 25.

II.  **MEDICAL AND OPINION EVIDENCE.**

Claimant has not received regular medical treatment, but the record contains the following medical opinions and treatment records.

**A. Dr. Oatley – August 20, 2003.**

On August 20, 2003, Dr. Jeff Oatley, a clinical psychologist conducted a consultative psychological evaluation of Claimant for a prior disability application. R. 263-65. Claimant reported that he suffers pain and discharge from his right ear, but cannot afford treatment. 263. Dr. Oatley's mental status examination found: essentially normal mood and affect; limited fund of knowledge; no concentration deficits; no orientation problems; no severe memory deficits; no hallucinations; and appropriate behavior. R. 264. Dr. Oatley diagnosed Claimant with Depressive Disorder and stated that Borderline Intellectual Functioning and hearing loss of the

right ear should be ruled out. R. 265. Dr. Oatley found no significant problems with activities of daily living, social functioning or concentration. R. 265. Dr. Oatley's report states that Claimant was then employed as a pizza delivery driver and security guard. R. 265.

### B. Dr. Caraballo – August 21, 2003.

On August 21, 2003, Dr. Darwin Caraballo, M.D., conducted a consultative physical examination of Claimant. R. 267-71. Claimant reported a long history of problems with the right ear, including severe pain, discharge, and imbalance, which caused Claimant to stop working. R. 267. Claimant stated that he has had several surgical procedures and cleanings perform on the right ear over the years by a Dr. Freeman. R. 267. Dr. Caraballo's examination of the right ear revealed a large opening and some drainage. R. 268. The right ear was very painful to the touch, but the mastoid area appeared intact. R. 268. Dr. Caraballo found no other physical infirmities, and Claimant's strength and range of motion were normal. R. 268-69. Dr. Caraballo's impressions were multiple prior surgeries of the right ear canal, current otitis externa on the right ear canal, and decreased hearing acuity of the right ear. R. 269.[1] Dr. Caraballo recommended that Claimant be evaluation by a specialist and that Claimant would likely need to have his right ear canal cleaned. R. 269. Dr. Caraballo offered no opinion as to Claimant's ability to work or any specific limitations Claimant's right ear impairment impose on his ability to work. R. 267-71.

### C. Dr. Craven – October 14, 2008.

On October 11, 2008, Claimant was hospitalized after being discovered unresponsive and intoxicated on a park bench. R. 318. During the hospitalization, Claimant was treated by Dr. Craven for his complaints of ear pain. R. 318. Claimant reported a long history of ear pain, vertigo and discharge. R. 318. Dr. Craven's examination of the right ear canal revealed partial

---

[1] "Otitis externa" is an inflammation of the external auditory canal. Doc. Nos. 15 at 4;16 at 2.

wax obstruction, no gross purulence, no granulation of the tissue, no sign of cholesteatoma, a firm mastoid bone, and no tenderness. R. 319. Dr. Craven's assessment was neglected right mastoid cavity. R. 319. Dr. Craven recommended cleaning the cavity once or twice a year and stated that he could see Claimant as an outpatient. R. 319. The record contains no other treatment notes from Dr. Craven.

### D. Dr. Graham – June 17, 2009.

On June 17, 2009, Dr. Malcolm J. Graham, III, a clinical psychologist, completed a consultative psychological examination of Claimant. R. 334-37. Claimant reported to Dr. Graham that he had a brain tumor partially removed nine or ten months prior to the evaluation and since then he has experienced vertigo, dizziness, irritability, and syncope. R. 335. Dr. Graham's mental status examination revealed: no indication of depression or anxious mood; rational thought process; no problems in attention and concentration; proper orientation; no deficits in recent or remote memory; no hallucinations; and no behavioral indications of anxiety. R. 335-36. Dr. Graham diagnosed Claimant with probable cognitive disorder, not otherwise specified, alcohol abuse in short-term remission, probable borderline intellectual functioning, a brain tumor by report, and vocational problems. R. 336. Dr. Graham assigned Claimant a global assessment of functioning score of 65-75. R. 336. Dr. Graham opined that Claimant's prognosis is guarded. R. 336. In terms of his functional ability, Dr. Graham opined that Claimant appeared "to have some mild to possibly moderate difficulties in his attention or concentration." R. 336.

### E. Dr. Barber – July 8, 2009.

On July 8, 2009, Dr. Alvan Barber, M.D. completed a consultative physical examination of Claimant. R. 339-48. Claimant stated that he suffers from a brain tumor, mastoid cavity

infections of the right ear, hernia, dizziness, fainting, constant pain, vertigo, headaches, irritability and schizophrenia. R. 339-40. Physical examination of the right ear revealed right canal enlargement and pain, but no obvious drainage. R. 341. Dr. Barber stated that Claimant favored his left ear during the examination. R. 341. All other physical systems were intact and showed no signs of impairment. R. 341-43. Claimant's mental status examination was also largely normal. R. 343. Dr. Barber's impressions were: right ear pathology with decreased hearing and symptoms as reported; history of mastoid tumor; history of family member with schizophrenia; history of depression; and history of alcohol abuse not in remission. R. 343. In terms of Claimant's functional ability, Dr. Barber opined that Claimant can: walk, stand, and sit for reasonable periods of time; push and pull with upper extremities; and use upper body movements with coordinated activities with hands. R. 343.

### F. Non-Examining Opinions.

The record contains non-examining opinions from state agency physicians and psychologists. R. 349-66; 367-74; 380-87; 388-405.

#### 1. Dr. Buffone – August 4, 2009.

On August 4, 2009, Dr. Gary Buffone provided a Psychiatric Review Technique ("PRT") and a mental residual functional capacity assessment ("MRFC") based upon a records review. R. 349-66. In his PRT, Dr. Buffone opined that Claimant has an organic mental disorder, not otherwise specified, and a substance addiction disorder. R. 349-50, 357. Dr. Buffone did not opine as to whether these impairments are severe or non-severe, but he did opine that they result in moderate restrictions in activities of daily living and in maintaining concentration, persistence, or pace. R. 349, 359. Dr. Buffone opined that all other areas of functioning Claimant's

impairments result in mild or no limitations. R. 359. Dr. Buffone based his opinions on the evaluations performed in 2003, and Dr. Graham's mental health evaluation. R. 361.

In his MRFC, Dr. Buffone opined that Claimant is moderately limited in the ability to: maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms; interact appropriately with the general public; respond appropriately to changes in the work setting; and to set realistic goals or make plans independently of others. R. 363-64. In all other areas, Dr. Buffone opined that Claimant is not significantly limited. R. 363-64. Dr. Buffone further opined that:

> Claimant may have difficulties w[ith] tasks involving sustained focus but <u>remains mentally capable of carrying out simple instructions and tasks</u> as reflected in [activities of daily living]. Claimant may have problems w[ith] occasional irritability and with intense/prolonged social contact but is able to interact appropriately on a limited basis (shops, sees family at times). Claimant may have difficulties w[ith] high stress/demand task situations and would likely benefit from assistance w goal-planning.

R. 365 (emphasis added). Thus, Dr. Buffone ultimately opined that Claimant is capable of carrying out simple tasks.

### 2. Dr. Wise – November 30, 2009.

On November 30, 2009, Dr. Steven Wise, a psychologist, provided a PRT and MRFC based upon a records review. R. 388-405. In PRT, Dr. Wise opined that Claimant has borderline intellectual functioning or other organic mental disorder, not otherwise specified, a history of depression, and substance addiction disorder reportedly in remission. R. 392-93, 395, 400. Dr. Wise did not opine as to whether these impairments are severe or non-severe, but he did opine that they result in moderate restrictions in maintaining concentration, persistence, or pace. R. 392, 402. In all other areas of functioning, Dr. Wise found mild or no limitations. R. 402. Dr. Wise based his opinions on Dr. Graham's evaluation. R. 404.

In his MRFC, Dr. Wise opined that Claimant is moderately limited in the ability to: understand and remember detailed instructions; carry out detailed instructions; and to set realistic goals or make plans independently of others. R. 388-89. In all other areas, including in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, Dr. Wise found that Claimant is not significantly limited. R. 388-89. Dr. Wise further opined that:

> Claimant appears limited to simpler tasks and will benefit from planning and goal setting help. [July 8, 2009, physical examination] suggests [alcoholism] is not in remission, [cognitive functioning] is okay, and he has a history of [depression and schizophrenia]. The evidence for [schizophrenia] is not compelling. He appears mentally capable of a simple routine tasks.

R. 390. Thus, Dr. Wise ultimately opined that Claimant is capable of performing simple, routine tasks.

### 3. Dr. Krantz – August 4, 2009.

On August 4, 2009, Dr. Dreama Krantz provided a physical residual functional capacity assessment ("RFC") based upon a records review. R. 367-74. Dr. Krantz opined that Claimant has a history of an intracranial mastoid tumor and a history of alcohol abuse disorder. R. 367. Dr. Krantz opined that Claimant is limited to: lifting 10 pounds frequently and 10 pounds occasionally; standing and/or walking at least 2 hours in an 8-hour workday; and sitting for a total of 6 hours in an 8-hour workday. R. 368. Dr. Krantz opined that Claimant has no limitations in the ability to push or pull. R. 368. Dr. Krantz opined that Claimant has occasional postural limitation in most areas and Claimant should never climb ladders, ropes, or scaffolds. R. 369. Dr. Krantz found no other limitations except that Claimant should avoid concentrated exposure to hazards. R. 370-71. Ultimately, Dr. Krantz opined that Claimant has a

medically determinable physical impairment, but the medical evidence does not support Claimant's allegations of such severe limitations resulting therefrom. R. 372.

### 4. Dr. Holifield – November 20, 2009.

On November 20, 2009, Dr. Edward Holifield, M.D. provided an RFC based upon a records review. R. 380-87. Dr. Holifield opined that Claimant's primary impairment is a history of headache and that he has no secondary impairment. R. 380. Dr. Holifield acknowledged that Claimant has a history of a right ear surgery as a child a more recent history of ear infections, but there is no evidence a malignant recurrence. Dr. Holifield opined that Claimant has no exertional, postural, manipulative, or visual limitations, based upon Dr. Barber's consultative evaluation. R. 381-83. Dr. Holifield found that Claimant is limited in his ability to hear and should avoid concentrated exposure to hazards. R. 384. Dr. Holifield also opined that Claimant's subjective allegations are not entirely credible. R. 385.

### G. Third-Party Statements.

On June 4, 2009, Claimant's friend, Denise Bretzel, completed a third-party function report. R. 190-97. Ms. Bretzel stated that she checks on Claimant in his van on a daily basis, but she was unable to answer a majority of the questions related to Claimant's functional ability. R. 190-97. Ms. Bretzel concluded that since she has known Claimant he has been unable to "function properly." R. 195.

On June 7, 2009, Claimant's sister, Roseanna Ovington, completed a third-party function report. R. 201-08. Ms. Ovington stated that Claimant is in constant pain, has vertigo, loses conscious, and is "pretty much incapacitated." R. 206. Ms. Ovington also stated that she does not see Claimant often. R. 202.

## III. ADMINISTRATIVE PROCEEDINGS.

Claimant's application was denied initially and upon reconsideration. R. 45-48. On October 20, 2010, a hearing was held before the ALJ, and Claimant, who was represented by counsel, and a vocational expert (the "VE") were the only persons who testified. R. 22-44. On November 9, 2010, the ALJ issued a decision finding Claimant not disabled.

The ALJ made the following significant findings:

1. The [C]laimant meets the insured status requirements of the Social Security Act through December 31, 2013;

2. The [C]laimant has not engaged in substantial gainful activity since September 30, 2006, the alleged onset date;

3. The [C]laimant has the following severe impairments: probable cognitive disorder; probable borderline intellectual functioning; and history of substance abuse;

4. The [C]laimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments;

5. [T]he [C]laimant has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: The [C]laimant is restricted to unskilled and semi-skilled work.

6. The [C]laimant is capable of performing past relevant work as a dishwasher, security guard, parking lot attendant, and prep cook. This work does not require the performance of work-related activities precluded by the [C]laimant's [RFC].

7. The [C]laimant has not been under a disability . . . from September 30, 2006, through the date of this decision.

R. 9-16. The ALJ considered Claimant's right ear impairment and allegations of a back impairment, but found them non-severe impairments. R. 11-13. As to the ear impairment, the ALJ found that the objective evidence shows "relatively benign findings." R. 12. In making this finding the ALJ relied on the examinations of Drs. Craven and Barber. R. 12. In his

decision, the ALJ did not mention Dr. Caraballo's 2003 evaluation. R. 9-16. With respect to Claimant's alleged hernia and back problems, the ALJ found that there is no evidence in the record reflecting treatment for or limitations from the alleged conditions. R. 12. The ALJ relied on Dr. Barber's evaluation, which showed Claimant's back and abdomen were normal, normal muscle strength, sensation, and a negative straight leg test. R. 12.

With respect to the non-examining opinions, the ALJ gave "some weight" to the opinions of Drs. Buffone and Wise. R. 15. The ALJ stated that their PRT and MRFC opinions are largely consistent with the ALJ's RFC and the objective evidence of record. R. 15. The ALJ also gave "significant weight" to Dr. Holifield's RFC, finding no exertional limitations, because "it is consistent with the objective evidence of record and treatment history, and is supported by the record as a whole. . . ." R. 15.

The ALJ did not state the weight that was given to Dr. Krantz's non-examining RFC opinion. R. 9-16. The ALJ also did not discuss Ms. Ovington or Ms. Bretzel's third-party statements. R. 9-16. The ALJ also found that Claimant's subjective statements have little credibility based upon the treatment records, evaluations, and his activities of daily living. R. 12-13.

## IV. **THE ISSUES.**

Claimant raises three issues on appeal. Doc. No. 15. First, Claimant maintains that the ALJ erred by failing to state with particularity the weight that was given to Dr. Caraballo's evaluation and the reasons therefore. Doc. No. 15 at 7-8 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). Second, Claimant argues that ALJ erred by failing to consider and state the weight given to the third-party statements. Doc. No. 15 at 8-10. Third, Claimant argues that the ALJ erred by failing to state the weight he gave to Dr. Buffone's opinion that Claimant

has moderate limitations in the ability to complete a normal workday and workweek. Doc. No. 15 at 10-12. Claimant requests that the case be reversed for an award of benefits or, alternatively, reversed and remanded for further proceedings. Doc. No. 15 at 2, 12-13.

The Commissioner maintains that the ALJ did not err by failing to state with particularity the weight given to Dr. Caraballo's opinion because it was made three years before Claimant's alleged onset date and there is no rigid requirement that the ALJ refer to every piece of evidence. Doc. No. 16 at 6 (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)). Alternatively, the Commissioner maintains that the ALJ's failure is harmless because he relied upon the more recent treatment records of Dr. Craven and the evaluation of Dr. Barber. Doc. No. 16 at 7. As to the third-party statements, the Commissioner asserts that an ALJ "is not required to explicitly mention or explicitly assign weight" to them. Doc. No. 16 at 8 (citing *Osborn v. Barnhart*, 194 Fed.Appx. 654, 666 (11th Cir. 2006)). The Commissioner contends that when an ALJ makes a specific credibility finding as to a claimant's subjective statements, his evaluation of third-party statements is implicitly included therein. *Id.* at 8-9. With respect to Dr. Buffone's opinion, the Commissioner maintains that the ALJ specifically accorded it "some weight" and, therefore, because he did not assign it controlling weight, the ALJ was not required to incorporate every one of Dr. Buffone's findings into the ALJ's RFC. Doc. No. 16 at 9-12. Thus, the Commissioner requests that the final decision be affirmed. Doc. No. 16 at 12.

V. **LEGAL STANDARDS.**

 A. **THE ALJ'S FIVE-STEP DISABILITY ANALYSIS.**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. See 20 CFR §§ 404.1520(a), 416.920(a). In *Doughty v. Apfel*, 245 F.3d 1274, 1278

(11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. (citations omitted). The steps are followed in order. If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

### B. THE STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356,

1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

## VI. ANALYSIS.

### A. Dr. Caraballo.

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability. The Eleventh Circuit recently clarified the standard the Commissioner is required to utilize when considering medical opinion evidence. In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178-79 (11th Cir. Jan. 24, 2011), the Eleventh Circuit held that <u>whenever</u> a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion <u>requiring the ALJ to state with particularity the weight given to it and the reasons therefor</u>. *Id.* (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (failure to

clearly articulate reasons for giving less weight to the opinion of treating physician constitutes reversible error).

In this case, it is undisputed that the ALJ failed to even mention Dr. Caraballo's 2003 opinion. Although the Commissioner maintains that the ALJ was not required to state with particularity the weight given to Dr. Caraballo's opinion because it was rendered three years prior to the Claimant's alleged onset date, there are no temporal limitations on an ALJ's duty to state with particularity the weight given to the medical opinions of record. See *Winschel*, 631 F.3d at 1178-79 (holding that ALJ must state with particularity the weight given <u>whenever</u> an opinion is offered). Accordingly, by failing to even mention Dr. Caraballo's opinion, much less state with particularity the weight given to it, it is recommended that the Court find that the ALJ has erred.

As set forth above, the Commissioner maintains that the error is harmless. Doc. No. 16 at 7. The Eleventh Circuit has stated that "when an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand." *Mills v. Astrue*, 226 F. App'x. 926, 931-32 (11th Cir. 2007) (unpublished) (citing *Diorio v. Heckler*, 721 F.3d 726, 728 (11th Cir. 1983). In this case, Dr. Caraballo's opinion provides that Claimant's right ear canal was very painful, had some drainage, and decreased hearing acuity, but the mastoid area appeared intact. R. 268-69. Dr. Caraballo found no other physical infirmities and offered no opinion as to Claimant's ability to work or any specific work-related limitations that result from Claimant's right ear impairment. Doc. No. 267-71.

Dr. Craven's more recent evaluation of the right ear canal revealed a wax obstruction, no gross purulence, no granulation, a firm mastoid bone, and no tenderness. R. 319. Dr. Craven's

only recommendation was that Claimant have the right ear canal cleaned once or twice a year. R. 319. Dr. Barber's evaluation of the right ear canal was positive for pain and canal enlargement, but all other physical systems were intact, and Dr. Barber did not find any functional limitations other than Claimant favoring his left ear. R. 339-43.

The ALJ thoroughly discussed and relied upon Drs. Craven and Barber's evaluations in his decision. R. 11-12. At best, Dr. Caraballo's evaluation, which was done three years prior to Claimant's alleged onset date, shows slightly more severe right ear canal impairment than the more recent evaluations of Drs. Craven and Barber. Nevertheless, Dr. Caraballo's evaluation does not contradict the ALJ's findings with respect to Claimant's right ear canal or his physical limitations. Accordingly, it is recommend that the Court find the ALJ's failure to state with particularity the weight given to Dr. Caraballo's opinion is harmless. *Mills v. Astrue*, 226 F. App'x. 926, 931-32 (11th Cir. 2007) (unpublished) (citing *Diorio v. Heckler*, 721 F.3d 726, 728 (11th Cir. 1983)

### B. Third-Party Statements.

Claimant argues that the ALJ erred by failing to discuss and weigh the third-party statements. Doc. No. 15 at 8-10. The Eleventh Circuit has held that the testimony of family members is "evidence of a claimant's subjective feelings of pain." *Osborn v. Barnhart*, 194 F. App'x. 654, 666 (11th Cir. 2006) (unpublished) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983)).[2] In *Osborn*, 194 F. App'x. at 666, the Eleventh Circuit stated that an ALJ does not err by failing to mention such third-party statements if they are implicitly rejected by the ALJ's credibility determination of the claimant. In this case, the ALJ specifically gave Claimant's subjective statements regarding his symptoms and limitations "little credit." R. 12-13. The third-party statements of Ms. Ovington and Ms. Bretzel are directly related to

---

[2] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority.

Claimant's symptoms and limitations. R. 190-97, 201-08. Thus, those statements are implicitly rejected in the ALJ's credibility determination. Accordingly, it is recommended that the Court find that the ALJ did not err by failing to mention the third-party statements.

### C. Dr. Buffone.

Claimant maintains that the ALJ erred by failing to state with particularity the weight given to Dr. Buffone's opinion and by failing to state with particularity the weight given to Dr. Buffone's finding that Claimant has moderate limitations in the ability to complete a normal workday and workweek without interference from psychologically based factors. Doc. No. 15 at 10-13. First, the ALJ specifically stated that he gave "some weight" to the opinions of the non-examining PRTs and MRFCs, and he cited to Dr. Buffone's opinions. R. 15. Thus, Claimant's argument is without merit. Moreover, although Dr. Buffone found that Claimant has moderate limitations in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, Dr. Buffone ultimately opined that Claimant is capable of work requiring the performance of simple routine tasks. R. 365. Accordingly, it is recommended that the Court find that the ALJ did not commit error with respect to Dr. Buffone's opinion.

## VII. <u>CONCLUSION</u>.

For the reasons stated above, it is **RECOMMENDED** that the Court:

1. AFFIRM the final decision of the Commissioner;

2. Direct the Clerk to enter judgment in favor of the Commissioner; and

3. Direct the Clerk to close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within **fourteen (14) days** from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** in Orlando, Florida on July 3, 2012.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Richard A. Culbertson
3200 Corrine Dr
Orlando, FL 32803

John F. Rudy, III
Suite 3200
400 N Tampa St
Tampa, FL 33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
Christopher G. Harris, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable Gerald F. Murray
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Desoto Building #400
8880 Freedom Crossing
Jacksonville, FL 32256-1224